Mr. Narvaez, right? Narvaez, Your Honor. Okay. May it please the Court, Gregory Narvaez for the appellant, Mr. Rose. If I could, I would like to reserve the truth. You represent Azuma as well, right? Your Honor, Azuma has been dismissed from the litigation, and so this is one of the wrinkles in the litigation. I didn't intend to get to that heavily today, but I'm happy to go there if those questions have come up during the argument. I'd like to reserve two minutes for rebuttal, please. Speak your honor to the clerk. Your Honors, the district court abused its discretion in entering the preliminary injunction because it applied the law incorrectly. And it did so in two main ways today that I would like to highlight. First, it entered the preliminary injunction under a provision of the PACT Act that has no application on this record. Second, applying that provision, the district court failed to apply the required legal test to determine whether Azuma's downstream customers, the tribal retailers, are lawfully operating. And the reason that we are focused on the downstream customers in this particular case is because the PACT Act is downstream focused. So to the first point, Section 376AE2A has no application. And this much is clear from the plain language of the statute. The statute provides that two categories of persons shall not engage in any delivery-related conduct for an entity listed on the list. The natural reading of that is that it's not the person on the list who may not deliver, but it's third parties who may not deliver. Now, the district court didn't engage with the text, and so it's difficult to really understand its interpretation. Counsel, forgive me. I know you said that Azuma has been dismissed from litigation. That's the guts of the case. When did this happen? I have no record of it being dismissed from the case. When did that happen and who did it? That happened on a motion to dismiss, Azuma's motion to dismiss based on sovereign immunity. And that was granted? That was granted as to Azuma Corporation. And the reasoning was this. So the court's position and the state's position will be is that the district court is still nonetheless reaching Azuma by enjoining Mr. Rose as an official of the tribe. It's kind of an ex parte young fiction. It's ex parte young. If you enjoin Mr. Rose, who would be doing this on behalf of the tribe, you are enjoining the corporation from doing the deliveries under the package. Yes, it is under ex parte young. But there is an additional wrinkle there, an error, that I believe is glaring. Counsel, before you get to that, and I'm fine with your bringing that up, I have a different question, different area. And the first issue you were talking about a couple of minutes ago is we're looking at de novo as a matter of statutory interpretation. That's correct. Yes. And if we were for some reason to decide the district court got it wrong, then that's probably legal error. But if we disagree with you, then it isn't. I think that's correct. Okay. So here's my question. There's been a lot of focus here on the retailers qua retailers and the test over them. California makes an argument at page 21 of its brief. Azuma holds no license under the Licensing Act. Accordingly, whether or not any particular customer of Azuma's is licensed or unlicensed, Azuma's lack of its own license means that none of Azuma's customers are lawfully engaged in the cigarette business. As I read California law, that you can't buy cigarettes from an unlicensed manufacturer or distributor. There's no dispute Azuma had no such license, right, from California? That's correct, Your Honor. So according to California, all of the retailers are violating the law, not operating lawfully, and so are consumers under the PACT Act because they're buying from somebody who isn't licensed, which is different than they're selling an unlicensed. So, first of all, why is California right that because the retailers are buying from unlicensed manufacturer or distributor, they are a consumer under the PACT Act? For two reasons, Your Honor. First is that California law has a carve-out under the Licensing Act that provides that on reservation, well, the legislative history says on-reservation tribal retailers may buy from anyone without a license and are not required to have a license themselves. And so that's a matter of state law. And what that does, I think, is it's a recognition of federal law principles. And so in Your Honor's scenario there, and as the issue with the state's argument, is the state's argument, essentially the fruit of the poisonous tree, that by buying from a Zuma who doesn't have a license, it's operating unlawfully, assumes, well, it begs the question, what law applies on reservation to the tribal retailers that causes their purchase to be unlawful? So in your view, for example, and I'm going to give you a hypothetical, that what your argument is is the same whether the tribal retailers are buying cigarettes from a Zuma or buying cigarettes from Jimmy who's making them in his basement. Well, Jimmy who's making them in his basement, Your Honor, likely isn't complying with the FDA requirements associated with cigarettes. But I'm talking about California law. California law, your client putting aside federal law. Under state law, your client, California, can't regulate the retailers who are selling to other people, buying them from somebody who's making cigarettes in their basement. Your Honor, no, my position is not that it can't regulate. My position is that to determine whether it can regulate, there's a legal test that's established. And the district court failed to conduct the test. Is that the Bracker test? Well, the tests are laid out in this case, Your Honor. Well, the cases lay out a framework, okay, and Big Sandy lays this out. If the state's regulating an Indian on his reservation, state law is generally inapplicable. The district court acknowledged that, okay? But you can move beyond that. And you can move, there's a minimal burden test. But the minimal burden test, if you read it through the case law, says the state can apply minimal burdens on on-reservation retailers, right? This is an exception that's been carved out from the general presumption that state law does not apply. But the minimal burden test has to be attached, and the state acknowledges this in its brief, that it has to be attached to a valid tax. Why doesn't the Big Sandy case control here? Because we have inter-tribal sales and then on-reservation sales to non-members. Why isn't that all controlled by Big Sandy? How would you distinguish it? Is it just, oh, go ahead. Big Sandy is very helpful in that it lays out the applicable tests. And the takeaway from Big Sandy is that the court's test depends on the who and the where of what the state is seeking to regulate. What are the differences on taking each? What are the who and where differences between Big Sandy and this case? And that's, I'm glad you asked that. The who in Big Sandy was an Indian that left its reservation, was a tribal corporation. Where off the reservation? In the middle of San Francisco. And the question there, the court said, well, when you're an Indian and once you leave your reservation, state law generally, you're subject to state laws of general application. And so if you look at Big Sandy, what it said is it said, this corporation is leaving its reservation, so that's the where. It's subject to state laws of general application. And so state law applies to Big Sandy. Here, we are, as the PACT Act requires, we're looking downstream to an Indian on its reservation. And so we got to formulate the test. And the district court, it started down the path. It said, look, when the state's regulating on a reservation, generally inapplicable, but then it went to minimal burden. But to get to minimal burden, you have to have a valid tax. To determine whether there's a valid tax, you have to engage in BRACOR. And here, that's where the district court went awry. It never engaged in BRACOR. And so the- Well, what level, I guess, because there are pre-BRACOR cases, and Mo, and there are cases from our court and others that suggest that it is not a sufficient intrusion into tribal sovereignty for a state to tax the sale of cigarettes to non-members, even when it's on the reservation. So why isn't that this case? What's missing? Glad you asked that question. From the cases, and it starts in Colville, and it's reiterated in- it's laid out in Mill Helm, and you can- and this was what was at issue in Chemehuevi. Where's the legal incidence? And in Chemehuevi, they said, yes, in California's tax scheme, the legal incidence is not on the non-Indian. But there's an additional sub-area of that in the case law. And that's where the non-Indian is coming on the reservation and due to value added on the reservation.  And in that- So that's where I thought you were going to go. So I guess looking at the Ferris Declaration and others, so your client is selling to tribal retailers where it's established, doesn't seem to be disputed, that most of them are not located within tribal gaming or other enterprises that might bring it within that value added piece. Most of them are in gas stations or far away or not co-located with casinos. Only a minority are actually part of casinos. Is that your value added argument? That somehow that distinguishes the typical kind of sale to non-members that seems to be covered by these cases? And I think most are in tribal establishments or tribal casinos or near tribal casinos. But tribal establishments doesn't seem to distinguish it because I think a smoke shop without additional factors that was owned by tribal members and selling to non-members would be covered. So you need to show something else, some other form of value added to, I believe, all of these casinos- I'm sorry, all of these retailers in order to evade the PACT Act, do you not? And the value added, I would highlight, Your Honor, is an interest to be taken into consideration as part of bracker balancing. Value added by what? Because under the cases, can it be the value added from selling cigarettes to non-members? I think that's already covered. Well, the value added can be on-reservation developments, economies that tribes have invested in. Here, tribes have invested millions of dollars, in some cases, in fuel stations that complement casinos, that complement hotels, right? They're attracting people to their reservation. The draw and the issue that was in Colville is what the court found there is that, hey, the only reason these people wouldn't otherwise come to your reservation, the only reason they're coming here is they can buy Marlboros, you know, short of the state tax. And so I want to go back to your answer to one of my questions. I think I heard you say that California law says retailers on tribes don't need to buy from a licensed person. Is that what you said? It's under the Licensing Act. And are you referencing 22980.1b2? Yes. And the statute does not say that, but if you look in the legislative history. I understand. I just wanted to make sure that I was looking at the section that you or subsection that you were referencing. Do you want to save your time? Yes, and I want to save my time. That's under the Licensing Act of 03. We also have the Tax Act, which I'm sure my friend from the other side will discuss. Well, I reserve. All right. So Mr. Asensi. Good morning, and may it please the Court. Peter Nushenzie on behalf of the State of California. I think it's important to start with what's not in dispute here. Rose doesn't dispute that Azuma's on the PACT Act noncompliant list. He doesn't dispute that he delivers cigarettes or causes cigarettes to be delivered on Azuma's behalf. And he doesn't dispute that neither Azuma nor its customers comply with state law. Instead, he just makes some unconvincing technical arguments to avoid the clear weight of the law. Those arguments should be rejected. Well, I guess, Mr. Nushenzie, if we're talking about the BRCA test, the matter of tribal sovereignty and the protection of that under these cases and under federal law, it's not a mere technicality, I guess. I mean, we'd be talking about the application of it. But what's your response to that question about the incidence of it? How do you think our cases control the sale of cigarettes on a reservation to nonmembers with respect to the value-added arguments that your friend makes? Sure. So in order for minimal burdens to attach, there has to be a valid tax applied. Chemehuevi found that the California tax was validly applied to nonmembers. And so that first step is accomplished, and now minimal burdens can attach. And then there has been decades of Supreme Court precedent outlining the contours of what those permissible minimal burdens are, and then followed by the panel in Big Sandy applying those decades of precedent to the California law in particular and found them to be minimal burdens. I think what's also important is that those minimal burdens attach regardless of whether any particular Indian retailer's sales are, in fact, taxable. As the court in Big Sandy said, minimal burdens may be imposed on Indian businesses that purport to engage only in tax-exempt transactions. So my friend on the other side has a couple of theories for why perhaps some of Azuma's customers might be able to sell tax-exempt cigarettes to nonmembers, but that doesn't bring them out of the minimal burdens test. And if you look at Supreme Court precedent, starting with Colville, in Colville the district court looked at the minimal burdens and said, yes, state, you can apply the minimal burdens to taxable sales, but not to untaxed sales. So, counsel, in the state's view, is the balancing and the calculus any different? Because here not only are they unlicensed to sell, but they are also buying from unlicensed sellers. Does that affect the record test or the burdens? No, Your Honor. I don't think it changes the burdens. I think, you know, to continue sort of along the legacy of the minimal burdens test, in Colville, as I said, the district court said, no, you can't apply it to untaxed sales, and the Supreme Court reversed. And then you have Milhelm in 95, you know, some 15 years later or something, saying you can apply minimal burdens only to untaxed sales. So here the cigarettes are undoubtedly untaxed, and so the minimal burdens apply regardless of the particular. My friend on the other side would prefer that the Bracker tax test be applied to each individual sale and determine whether the tax can particularly attach to that sale before those minimal burdens attach. But that's not the case law. Well, yeah, I guess I think that frames it well. How particularized is the particularized inquiry that we should do? So I think the State's position is that that question is answered. I think with Gila River, the Eighth Circuit case, there is this separate line of cases, and Big Sandy relays the test, that you have value created here in a way that's distinguishable. I guess setting aside the question of, I guess that raises two questions. First, we do have, I think, undisputed some casino-based retailers in the record, and so there's one question about whether that changes. That requires a separate particularized inquiry under the cases. But I guess then there's a separate question over whether that changes the overall analysis if the company is selling mostly to standard smoke shops that are not tied to that value creation. As to the first question, should that change the analysis if the cigarettes are part of the value added created by these tribal enterprises, as we've seen in Gila River and elsewhere? No, Your Honor, and I think the Eighth Circuit case, Flandreau, illustrates this point pretty well. In Flandreau, the tribe there was, there were two alcohol outlets on the tribe's land. One was in the casino and one was not. And the one in the casino, well, both of them did not pay taxes on the alcohol sales claiming they were exempt. And so the state revoked their licenses. The tribe then sued to get the state to give them back their licenses. And so what's different here is that my friend on the other side is not arguing these are tax-exempt. He is arguing that these are tax-exempt and, therefore, state, you don't get to see what's going on here. You don't get to get your reporting. You don't get to see, you know, you don't have to, we don't have to be licensed at all. We don't have to make reports of exactly where they're being made, where the sales are being made. The California regime is designed to look into the transactions and collect tax when and only when the tax is owed. And as I said before, those minimal burdens apply whether or not the tax is actually owed. So the Supreme Court has already done the Bracker analysis here. And the regime applies, again, regardless of whether the sales might be untaxed. So even if this court were to agree with Flandreau that those sales are non-taxable, the state still has the right to be able to look and get reports from the tribe saying, we sold X number of cigarettes to non-members at our casino, and they were not taxed. Counsel, I want to get for a moment, get back to the state law aspect of it. As I read the licensing act, I'm not sure that it's clear that retailers on Indian reservations are required to hold a license under that act. What's your best argument that state law requires that they have such a license? Well, there are two relevant licenses. There's the licensing act, which applies to retailers, wholesalers, distributors, manufacturers, up and down the chain. And then there's the older tax act, which has its own license that applies only to distributors. The district court relied on the tax act, but both apply here. So first, for the licensing act, my friend on the other side likes to reference the legislative analyst view of the law. But if you look at the text of the statute itself, it makes clear that the licensing requirement goes as far as the state has authority to impose it. It doesn't – Well, that gets back to the federal record kind of – Exactly, Your Honor. And in Milhelm, the Supreme Court made clear that more onerous requirements than the California licensing regime can be placed on tribal retailers. There, the tribal retailers had to have a certificate of exemption. They could only purchase from licensed distributors. And more than that, the individual consumers had to have a certificate of individual Indian exemption. So the panel in Big Sandy looked at that and said, okay, well, California's regime is less burdensome than that. If the Supreme Court says that that's a minimal burden, then this necessarily is a minimal burden. So to encapsulate what I'm understanding you to say, the licensing act says the state can impose it to the degree permitted constitutionally. Correct. So basically you don't know from looking at the act itself clearly what's covered. We have to go through the constitutional analysis. If we conclude that it can be done, then it applies. If it can't be done, then there is no tax. Is that right? Well, it's the license. The tax is a different question. Well, yeah. I should have said license. And I think also looking to the legislative analysis, you know, first the legislative analysis just got the law wrong. But even assuming that they got the law right, if you go on to the next sentence, it's very clear that what they're concerned with is being able not for retailers to be able to purchase or to not hold a license, but it was that licensed distributors would not be penalized for selling to people that would otherwise be unlicensable. So if you have a military base that has a store and the distributor sells to them and that's preempted for the store on the military base to have a license, the state didn't want to penalize the licensed distributor for making that sale. And that comports with the text of the statute where that carve-out is specifically for distributors. And that, again, makes sense based off of the California scheme where distributors are at the center of it. They're the ones who collect the taxes. They apply the tax stamps. Although everybody in the chain has record-keeping requirements, distributors are the ones that are required to make monthly reports to the state of all their distribution, taxed and untaxed. And that goes back to the district court's opinion, which focused on that. Chemehuevi makes it clear that retailers have the, or Indian businesses located on the reservation, have the duty to collect and remit tax to the state when and only when it's owed. And the only method that the state has created for those taxes to be collected and remitted is the tax act distributor license. So even if the licensing act doesn't apply, nobody in this chain has a distributor's license. Nobody is making the reports to the state saying these many are taxed, these many are untaxed. You know, again, my friend on the other side has some theories for why perhaps more cigarettes might be untaxed than the state would agree. But all the state is requiring here is for them to be within the license change and to make those reports to the state of what is taxed and untaxed. And if there's a dispute, that's where the dispute happens about taxability. So from California's perspective, even arguendo, if no license is required, there's no constitutional limitation that you're aware of that would, if you will, prohibit or limit your requirement that they report sales, right? Correct. And I think Milhelm and Colville and Big Sandy make it clear that those are all permissible burdens. And they're not doing that now. Correct. And I think it's important to focus. Why doesn't that turn on whether the tax is valid? Well, it depends on whether the tax is valid, not whether it is owed. So the tax is valid. It is properly applied. It is not categorically barred as a tax on Indians in their own reservation. It can apply on occasion. So it is a valid tax. Or on the value of tribal enterprises that are supporting tribal sovereignty. That could prevent the tax from being owed. But that's not a categorical, this could never apply, so therefore the state does not need to look into your. Well, what does the particularized part of the particularized industry mean then? Inquiry, right, that we're supposed to be doing. I'm not sure I follow the question. There's a particularized inquiry as to specific categories of transactions. But that's separate from whether minimal burdens attach. Right. Well, isn't it upstream of it? If only if the tax is valid and isn't either federally preempted or interferes with tribal sovereignty, can the state impose the minimal burdens that you're discussing? Well, I would say that's, it depends on, I think that's framed slightly incorrectly, Your Honor. And I think, for example, if a tribal retailer were to sell only to its own members on the reservation, that is clearly under the Bracker test preempted, and, you know, those are not taxable. The tax is still valid, and it still allows for the state to impose minimal burdens because the state has the authority to actually get those reports of those transactions, see them, and say, yes, these were all untaxable sales, carry on. You know, that's part of the, you know, that's exactly what the Supreme Court reached in Colville and Milhelm, where, again, even if you purport to engage in wholly, you know, only in tax-exempt sales, the minimal burdens still apply to ensure that that is true. Because just because a, you know, one tribe might have a casino and make sales at a casino and maybe that would be preempted, that doesn't mean that the state just has to take the tribe's word for it. You know, they need to report to the state, we made X amount of sales, this is where they took place, so that we don't have this, you know, so that the tribe actually gets the benefit of the tax exemption that it's entitled to and no more. Okay. Your time is up. Let me ask my colleague whether or not he has a district question. Thank you very much, counsel. Thank you. You have some rebuttal time. Your Honors, thank you. Briefly, Judge, you're hitting the issue on the head. The state and the district court got to minimal burdens before they got to the tax. And I will also go back to 376AE2A. Had the state moved under subsection D, so that's 376AD, that subsection governs deliveries by delivery sellers and part of the elements of that subsection are that the state taxes have to be paid, applicable state taxes and applicable stamps have to be affixed. So had the state moved under the correct provision of the PACT Act, the district court would have before it these precise issues. So is it your position that, notwithstanding the minimal burden context, that unless there's a valid tax, there can't be a requirement for a report. Is that right? The licensing scheme has to be attached to a valid tax. You're hitting it. And the licensing scheme has the reporting and that sort of thing. But the state concedes as much, but then when you get to the question of where's the valid tax, they want to point back to CHEMOAV, all of these distinguishable cases. We're talking here about, as Your Honors hit and understand, is the value-added piece. What value is on this? What's the weight of that interest vis-à-vis the state interest in that case? So this comes to us on a preliminary injunction, and we don't have the tribal retailers here. And without getting into the merits of that determination, isn't it enough for California to find that your client falls under the PACT Act if they can establish that some of the sales are clearly controlled by these earlier balancing tests? Or do you believe you've established clearly that you win on the value proposition side of these things? I think the issue has to at least be raised and addressed. Why can't that be on the merits, given what's the limited record before us, excluding the retailers on a preliminary injunction? Because that inquiry would not be – first of all, it would be done in the abstract, because we're under a different provision of the PACT Act, right? We're dealing with one that, in the first instance, doesn't get to value-added. Okay, but on the validity part of it, all we have is a list, the fact that these go to tribal – that some of these sales go to tribal casinos and that others of them go to smoke shops on reservation that seem to primarily sell to non-members. And the interests, Your Honor, are in addition to, I think, the locale of the resale. These are all individual tribes that regulate and license these entities on their reservations, have their own respective interests. And I think we'd run headlong into Rule 19 issues, were the court to just weigh those interests based on the limited record before us, which I should note was primarily in a declaration by a ZUMA's compliance director who goes out and vets these tribes before engaging with them. So we would be, I think, not doing right by the tribal retailers to be here and express their own interests in maintaining these streams of commerce. Okay, other questions about my colleague? Thanks to both counsel. Your arguments have been very helpful. We thank you. The case just argued is submitted.
judges: SMITH, BENNETT, JOHNSTONE